My name is Paul Turner. I'm with the Federal Public Defender Office in Las Vegas, Nevada. I'm here this morning to represent Daniel Corcoran. Dan Corcoran suffers from a devastating mental illness, bipolar disease, Roman I, the worst kind. This has been true largely throughout his life, since he was a teenager. There's a document in this case, which is not in the excerpts, but is in the record, which I missed, and I apologize to the Court for not putting it in the excerpts. It's an initial document when Dan Corcoran was arrested. It's Exhibit 5 in the District Court, and it's noted in the Index of Exhibits at EOR, page 37. It's an intake form for the Justice Court. Justice Court's the lowest court in Nevada. It's where you go when you first get arrested. The person's doing intake of Dan Corcoran. Simple little note, handwritten. Resident, Tascadero Mental, previously. Defendant is bipolar. Defendant states needs help. You don't see those kind of notes often. Most of us don't know what happens when somebody's arrested. Those early days are murky and unclear. Dan Corcoran's pleading for help, day one. He's been arrested four or five days in. Who else would have seen that? Well, his lawyer should have seen it if he's looking at the file. He should have, but would he have? He would have, Your Honor, because the Justice Court records do move on to what we call the District Court, our next level of felony level criminal court. His lawyer should have seen that. Did you say a competent lawyer would look at the intake? I think a competent lawyer would look at every piece of paper in his case. I think that's what a competent lawyer should do. Does his attorney know that he had been at Tascadero? Yes, he did, Your Honor. Okay, so he didn't need to see this in order to figure that out. No, although this would have been a window into that. And because he needs help, that's a little bit vague. It is vague, Your Honor. His lawyer, maybe. Yeah, it's vague, but it's very poignant. I'm going to help. That's what a lawyer is for. In Nevada, a lawyer is supposed to represent his client zealously within the bounds of the law. There are no options. You don't have any alternatives. You've got to do that. That's why you get a license in Nevada. This lawyer didn't do that. This lawyer got intimidated by a very unpleasant case. And I'm not here to apologize for Dan Corcoran or to downplay what happened here. But Dan Corcoran deserved a proper representation. He should have had a competency hearing. That's obvious from this record. There was a box of documents which we've emphasized. This is a very interesting case because the way the mental health records got to the court were not from Dan's lawyer. They got to the court from the prosecutor. I certainly commend him for putting them in the record. I sort of wonder why he did that. I'm wondering whether he was embarrassed almost to not do that. But that's where the box came from. At the plea, the box was in court. The prosecutor mentioned it. It's sort of the almost unmentionable thing, but it's always around. It's three volumes of mental health history for Dan Corcoran. Is this part of the certificate of appealability here? It is, Your Honor, and I can link it up. I thought your main issue is the failure for a trial counsel to file a notice of appeal. Is that what it is? I just wanted to connect it up to why he should have been doing things. He should have filed a notice of appeal because he should have realized that something is very wrong with this case.  If he's just counseled his client to go ahead and take the plea deal and his client has just pled guilty, then it would seem sort of odd for the lawyer to say, well, the next step is we're going to take an appeal from your plea. The fault would seem to be some step before that, wouldn't it? Absolutely, Your Honor. But your certificate of appealability here is limited to the question as to whether he should have filed a notice of appeal. Correct. But it's not whether he should have requested a competency hearing and whether he was ineffective in the advice he gave his client when he advised him to go ahead and take the plea deal. Except that it connects to prong one of Flores-Ortega because in prong one, as you know, you have to demonstrate that a rational defendant would want to appeal. A rational defendant, not a sick defendant, not a mentally ill defendant, but a rational defendant, we have to deal with, would have wanted to appeal, would have known that something's wrong here. I've got a problem. I'm sick. Somebody should have noted that. That's the linkage there. Counsel, does your claim about being bipolar one go to the question as to whether he was in the middle of a manic episode at the time that he committed the murder so that he should have been pleading not guilty by reason of insanity? Or does it go to the question of his ability to rationally think through the question of a plea deal? Because we have lots of people who are bipolar in this society who are quite functional. You're absolutely right, Your Honor. In Dr. Schmidt's expert report in the record, he shows if you're on lithium and you have proper amounts, my understanding is you can control it and maybe do quite well. Mr. Corcoran was on lithium, but it was in marginal amounts, which were not effective enough. And Dr. Schmidt, this is in the record, the expert that we retain, Dr. Schmidt has said that it's very probable, very probable that he was incompetent because of the low level. Incompetent at what point? Incompetent at the time that he pled guilty. Right. Right. Now, I think it also goes back clearly to when this crime occurred. You get into a lot of interesting questions there, as Your Honor knows. The felony murder rule comes into play where you may not have had to prove specific intent to kill to get the murder. You definitely did to get the attempt murder. There's no question about that. Let's assume that the attorney should have filed a notice of appeal. What would have been raised on appeal here? Are you talking about a Boykin involuntary plea of guilty here, or are we talking about something else? Boykin would be one of the issues. There is a Nevada authority that's been cited to the court which suggests that Boykin is raised later at post-conviction. I was wondering, because the State says that you can't raise that on direct appeal, right? I'm sorry to interrupt, Your Honor, but I would simply submit that a rational defendant would want to raise Boykin on appeal to at least preserve his right and to avoid a possibility. I say that because in a more recent case, and admittedly after this happened, the Nevada Supreme Court has held that a Faretta claim has to be raised on direct appeal. You're playing with fire when you don't. It's not a Faretta claim. No, sir, but they're very similar in concept. I mean, you don't have any record to show this. I mean, he takes the appeal and says it was involuntary, and you just look at the record. Can you put in a record outside the record itself? You have the record, obviously, of the plea, and you have the box. The mental records were in the record. They were tendered by a pleading filed by the State of Nevada. So those three volumes, all of that paper, that's in the record. We had a huge record of a mental health history of this man. It was in the record. The related issue is that the lawyer should have, I mean, you should be able to bring ineffective assistance claims on direct appeal before you have an adequate record in Nevada. There was an adequate record, three volumes of mental health history. Are you saying that in any case in which a dependent enters a plea of guilty, that counsel should take an appeal if there's any record of mental illness and say it's a Boykin kind of case? Because you're a defense counselor yourself, so are you saying when you don't do that? I'm really running this through Flores. I'm saying a rational defendant would want his lawyer to do that. I'm not saying the lawyer necessarily should or should not do that, but a rational defendant who presumably realizes he has a mental illness and he could well be incompetent would desperately want to have his competency evaluated before this case goes forward. As we all know, you can't convict an incompetent. You can't take a plea of an incompetent. You can't sentence an incompetent. So a rational defendant would want that issue to be brought forward. He would be begging to have it brought forward because he would know that he had a problem. The lawyer doing this, I suppose, would automatically have to say that I'm ineffective because I didn't raise this before the trial judge, right? It's kind of strange. It's irrational for the lawyer to say it, but maybe that's what he's supposed to do. Well, I think a lawyer with conscience would do that. Yes, sir. He'd have to do that. I don't think he could sleep well at night if he didn't do that. And it should have been done here. One thing, Your Honor, I apologize to interrupt you. I didn't ask for two minutes rebuttal.  You have to monitor your own time, counsel. Let me follow up with one question. I will give you a minute for rebuttal. The district court says that Corcoran had no grounds on which he could raise a direct appeal. Yes. So what are we supposed to do with that? What grounds did he have for direct appeal? I think he could have raised, the boy can claim, but maybe more pointedly, the ineffective assistance claims. In Nevada, if you have an adequate record, you can raise it on appeal. That's black letter law. The three boxes, three volumes of mental health history is an adequate record. Something is wrong here when there's no competency hearing. Mental health is never mentioned. The only man who mentions it is the prosecutor and the judge once, saying something like, gee, the guy's got some mental health problems. He was in a mental hospital for four years. They don't keep you there for four years if you're healthy. It's pretty basic, I think, Your Honor. And we would simply submit that he should have appealed and that this should be cause for allowing us to pursue the other claims in this case. The idea that an inmate law clerk could override mental illness as cause, I feel, is fairly, is just very, very weak. We all know that the bottom line to the attorney-client relationship is a healthy client who's not mentally ill. How in the world can an inmate law clerk somehow override a mental ill client? They make law clerks do some great things, but they're not really that well-versed in the law or dealing with mentally ill people, frankly. And that just doesn't make sense. It's counterintuitive, Your Honor. Thank you. If I could have that one minute. Thank you. Ms. Nagel. Good morning, Your Honors. May it please the Court, Heidi Nagel, on behalf of the respondents. Respondents this morning would ask the Court to affirm the Federal District's court order. Specifically, as to the first certified issue, the District Court and the Nevada Supreme Court did not err in concluding that trial counsel was not ineffective for failing to file a notice of appeal. The basis for that is the non-frivolous issues that Corcoran claims that he would have raised, specifically a challenge to the character of his plea and five claims of ineffective assistance of counsel, are required under Nevada law to be raised in a post-conviction proceeding. That's Franklin v. State, Bryant v. State, and Nevada revised statute 35810 sub 1. Is there any exception to this? Your opponent says there's an exception here. There are some very limited exceptions. Generally, those involve a constitutional challenge to the statute or a constitutional challenge to the sentence underlying the conviction. But where it's ineffective assistance of counsel or a challenge to the plea, pursuant to Nevada law, those must be brought in a post-conviction proceeding. That's pursuant to statute and case law. In this instance, we have a plea canvas and a plea agreement, in addition to counsel certification that Corcoran was competent, that he was not under the influence of drugs or alcohol, and these documents clearly indicate that Corcoran was raving among many important rights, his right to direct appeal and appellate counsel, whether retained or appointed. Now, the Nevada Supreme Court, when it ruled on this issue on the merits, which is a mixed question of law and fact, didn't cite to Roe v. Flores-Ortega, as did the Federal District Court, but it nonetheless supplied the correct test, specifically that a defendant in Corcoran's position would not rationally have wanted to directly appeal because of the waivers, and secondly, that the record belied any indication that Corcoran himself had told his attorney that he wanted a direct appeal, specifically in his second state post-conviction proceeding, Corcoran challenges trial court error, and his attorneys are prevailing to advise him of the direct appeal issue, but he never says, I told them I wanted an appeal, and that's at Excerpt of Record 256. The other thing that Roe v. Flores-Ortega asks us to look at, when we have a guilty plea agreement as opposed to a trial, did the defendant expressly waive some or all of his appellate rights in this case he did, and secondly, did he receive the benefit of the negotiation that he entered into, and in this case, for three very important reasons, Corcoran entered a negotiation. First, the state dismissed two of the charges. Secondly, the state agreed not to issue a recommendation regarding concurrent or consecutive sentencing, and third and most important, as was argued at sentencing, Corcoran wanted the possibility of parole so that he might someday have a relationship with his son and possibly his grandchildren. Did the Nevada Supreme Court talk about both of the prongs in this Roe v. Flores-Ortega? It did, Your Honor. Not as well articulated in Roe v. Flores-Ortega, but it did at Excerpt 265, where it addresses Corcoran's claim specifically. A rational defendant would not have had any grounds to appeal. It states that a defendant in Corcoran's position would not have appealed, but it doesn't state it with quite the specificity that Roe v. Ortega does. In this situation, the Nevada Supreme Court, having ruled on it, if you assume that it does adopt the Roe v. Flores-Ortega standard, would be entitled to deference under Woodford v. Viscotti because it is neither incorrect nor objectively unreasonable. However, if the court were to adopt the position that the Nevada Supreme Court did not adopt the Roe standard, Corcoran would still be required to prove that the state court's ruling had a substantially injurious effect under Brecht v. Abramson. And I would submit to you, for the reasons that Corcoran entered into the plea, he did not suffer a substantial injurious effect. Accounts were dismissed. The state made no recommendation regarding consecutive sentence, although he did get consecutive sentencing. And third, he does have the possibility of parole in this case. So as to the merits of Ground 1, the respondents would argue that the Federal District Court got it right, and we would ask you to affirm. As to the evidentiary hearing, Certified Issue No. 2, respondents argue that the Federal District Court did not abuse its discretion in not conducting an evidentiary hearing. Here, the standard requires that a petitioner is entitled to an evidentiary hearing if allegations in the petition, if proved, would entitle him to relief under Phillips v. Woodford or Turner v. Calderon. Here, because Corcoran waived all but a few very narrow grounds for direct appeal and all of the issues that Corcoran claims that he would have raised had he had a direct appeal, again, ineffective assistance of counsel and a challenge to his plea, which are required under Nevada law, again, to be raised post-conviction, and the Nevada Supreme Court addressed this, there were no grounds on which Corcoran could show that he would have won relief, specifically a new appeal or a Lozada appeal. Therefore, we're arguing the District Court did not err and should be affirmed on that ground. As to the third certified issue, the procedural default, counsel for Corcoran has argued that he had very severe and debilitating mental illness and that this should amount to cause to overcome the procedural default as to Grounds 2, 3, and 4. Respondents argue that the District Court did not err in finding them procedurally defaulted and the mental illness is not cause. Specifically, this Court has held that Nevada consistently applies its raise it or waive it rules with respect to non-capital habeas under Bang v. Nevada and Loveland v. Hatcher. The mental health history that was in front of the state courts and in front of the federal courts does not amount to cause. Specifically, Dr. Schmidt's analysis, as referenced by opposing counsel, was testing that occurred after the default period, which is our period of inquiry, March 14th, 1997, when the judgment of conviction was filed, and February 8th, 1998, when Corcoran filed his first state post-conviction proceeding. Dr. Schmidt tested Mr. Corcoran on September 7th and 8th in 2001, and he addresses a wide range of behaviors here. And he specifically addresses, as I noted in my brief, Corcoran's current mental status, how he was oriented in the prison and whatnot. However, even if you retroactively apply the analysis to show that Corcoran was mentally disabled, the mental health history that is presented does not rise to the level of the severe disturbance for which the just and fair remedy of equitable tolling applies. Specifically, if he was so severely mentally disabled, why was he able to file on November 1997 a belated direct appeal to the Nevada Supreme Court, and in February of 1998 a first state post-conviction proceeding, both of which were submitted, briefed, and had substantial points and authorities attached, and which are— Were these done pro se? Yes, Your Honor, they were. And they were briefed. They had points and authorities. These arguments are still at issue in the federal courts today. This court has held that where an illiterate inmate without inmate law clerk assistance cannot show cause, a literate inmate like Corcoran, with the assistance of an inmate law clerk, cannot claim cause. And the federal district court, in concluding that, relied on Tafel v. Martinez. Is there anything in the record of his incarceration to show that he was kept in a mental ward or any sort of thing like that? There is, Your Honor. There's substantial history showing that he was in a Tascadero probably from the time he was juvenile for a number of years. And counsel has argued that this is evidence that, particularly when he was arrested, that he was severely disabled, he asked for help. I would submit to you that this is not a naive person. He had had many interactions with law enforcement, and perhaps given the severity of the crime, once he got in jail— I mean, I wouldn't want to speculate, but perhaps he was accustomed to the environment and he knew what to say. The record does not reflect a severe and debilitating record of mental health history. Counsel has cited the Holt v. Bowerstocks out of the Eighth Circuit. In that instance, the defendant petitioner was so severely debilitated that he was not oriented as to time or place. He didn't know who he was. He thought Nancy Reagan was his nurse. He couldn't even deal with day-to-day living circumstances. We don't have a defendant who is that severely disabled in this case. May I ask you about the—counsel referred to the three boxes of records that the prosecutor brought in. How were they presented to the court? Your Honor, it was actually one box of records with three volumes in it. The prosecutor actually used the mental health records to demonstrate that in conjunction with his prior criminal history, that he was an extremely dangerous person in arguing for the sentence. And he was ultimately sentenced to murder with use and, I believe, attempt murder with use, for which he received multiple consecutive sentences with parole eligibility. Respondents would argue that under the competency standard that counsel has referenced, what we have to ask is whether a reasonable judge situated as the trial judge should have experienced doubt with respect to Corcoran's ability to enter a plea under Davis v. Woodford. And there has to be substantial evidence of bona fide doubt as to his mental status. In order for it to be ineffective assistance of counsel, we would have to show that Corcoran could not consult with his attorney to a reasonable degree of rational understanding and that the record indicates that he didn't understand what was the proceedings. Are there any findings by the trial court as to his competency to enter into the plea? Just the plea can, Mr. Honor, where he asks, he goes through and he asks him the questions in the colloquy. He doesn't, and my submission to you would be, was that his demeanor in court was not such that it would have brought that issue up to a sponte. He didn't show any rational behavior in court.  I would submit to you that Corcoran is incorrect in asserting that the trial court should have, sua sponte, conducted any kind of competency issue. I don't think the evidence was there. And I think based on the negotiation that Corcoran entered into, it was to his benefit and gave him what he sought to have, which was parole eligibility, at some point so that he might have a relationship with his child and possibly his grandchildren. And he received the benefit of that negotiation. Thank you, Ms. Nagel. Mr. Turner, I'll give you a minute. The plea canvass was a joke, Your Honor. All of us have seen decent, reasonable plea canvasses, particularly in federal court. I realize the rules are somewhat different, but the bottom line is Boykin. He never asked him, he never even said, Mr. Corcoran, you've had a history of mental illness. Are you feeling okay today? Everything okay with you? What's going on with your medicine? Zilch. Nothing. Yes, no answers. Yes, no answers don't mean anything. You need to ferret out the truth here. Although, Mr. Turner, the record might not reflect the way in which Mr. Corcoran presented himself. Somebody who sits alertly and looks at the judge and answers in a clear voice might not trigger any inquiry on the part of the judge. Right, Your Honor. But if I had a box with three volumes of mental health, if I was a judge, and I had a box next to my bench, you know something, I'd open that box and I'd say, Mr. Corcoran, I see you've had a heck of a history of mental illness. How are you doing? Something about it. Mention it. The judge mentions it briefly. Says, gee, the guy's been mentally ill. That's not cutting it. That is not fair. That's not constitutional. That's not a legitimate plea proceeding, Your Honor. Your client realized that if you're successful here in getting a rich, he may go back down and he might get life without parole. Does he know that? Yeah, Your Honor. He certainly should know. And if he doesn't, I've been. . . Because he worked out a good deal, it looked like. And if not, you know, he may have to go serve the life without any parole. No, you're absolutely right, Your Honor. He did get consecutive sentences instead of concurrent on that attempt murder. But, you know, you have a right to your day in court, a proper day in court. Does he know that risk or not know it? Your Honor, I've been representing him for about seven years, and I honestly can't stand up here today and remember sitting down and discussing in detail, you know, what would happen at that stage of this proceeding. Well, shouldn't you have told him? I think he fully understands that. . . Shouldn't you have told him that? I think I should have told him that. I hope I did. I think he fully understands. I talked to him yesterday, the day before yesterday, for the last time. I think he fully understands what's at stake here. He wants his day in court. He wants a fair day in court. And most of my clients are looking for that, and he's one of them that is. The only way you're going to get a fair day, even if you say counsel is ineffective, you've got to go back and show that his plea was taken in violation of Boykin, won't you? Yes, sir. That will be the principle. That's a heavy burden. It is a heavy burden, but I think we can show that, Your Honor. And we would love to have the opportunity to do that. Flores-Ortega was not applied completely here. There's one sentence applying the second prong. The first prong is ignored. The case had been out for about nine or ten months. I don't know if the Court knew about it or didn't cite it. If there are any other questions, I thank the Court for the opportunity to be here today. Thank you, Mr. Turner. We thank both counsel for the argument.
judges: Noonan, Siler, Bybee